UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17-cv-97-FDW

| | |
|---|---|
| CORNELIUS DELANE BENTON, )<br>)<br>         **Plaintiff,** )<br>)<br>vs. )<br>)<br>FNU CLIFTON, )<br>FNU STREET, )<br>)<br>         **Defendants.** )<br>_____) | **ORDER** |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Chad Clifton and Jacob Street. (Doc. No. 25). Also pending before this Court is Plaintiff's Motion for Partial Summary Judgment, (Doc No. 36).

## I. BACKGROUND

### A. Procedural Background

Plaintiff Cornelius Delane Benton is a North Carolina inmate incarcerated at Marion Correctional Institution in Marion, North Carolina. Plaintiff filed this action on June 8, 2018, naming as Defendants Chad Clifton and Jacob Street, who were correctional officers at Alexander Correctional Institution at all relevant times. Plaintiff brings an Eighth Amendment excessive force claim against Defendants, and he requests declaratory and injunctive relief and compensatory damages.

Defendants filed the pending summary judgment motion on October 25, 2018. (Doc. No. 25). On October 30, 2018, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the

1

motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 28). Plaintiff responded to the summary judgment motion on January 25, 2019, by filing his own motion for partial summary judgment. (Doc. No. 36). Thus, this matter is ripe for disposition.

B. **Factual Background**

1. **The Alleged Excessive Force Incident and the Summary Judgment Evidence**

a. **Plaintiff's Allegations**

Plaintiff alleges that on March 12, 2017, a correctional officer escorted him out of the kitchen at Alexander. (Doc. No. 1 at 5). Plaintiff alleges that, once in the hallway, Defendant Street slammed him into a wall and slammed his head into the floor, and Defendant Clifton put his knee into Plaintiff's back and punched Plaintiff in the face. (Id.). Lastly, Plaintiff alleges that Defendant Clifton tried to stab out Plaintiff's eyes with a key, leaving Plaintiff with a black eye. (Id.). Plaintiff claims he developed a black eye and experienced discomfort, pain, and soreness around his wrists, side, and back. (Id. at 7).

b. **Defendants' Summary Judgment Materials**

Defendants' summary judgment materials include the affidavits, and attached exhibits, of Alexander Unit Manager William N. Johnson, Defendant Jacob Street, Defendant Chad Clifton, Alexander correctional sergeant Darren Daves, and Alexander nurse Sarah Wilson. Defendants' evidence shows that on March 12, 2017, at around 11:25 a.m., multiple use of force incidents occurred involving Plaintiff, Defendants, and other correctional staff. (Doc. No. 27-1 at ¶ 14(a): Johnson Aff.). These incidents began when correctional officer Nathan Scruggs ordered Plaintiff out of the kitchen and into the hallway after he became belligerent and disrespectful. (Doc. No. 27-1 at ¶ 14(b)). While in the hallway, correctional officer Charles Odom observed Plaintiff

becoming irate and aggressive towards Officer Scruggs. (Id. at ¶ 14(c)). Officer Odom directed Plaintiff to submit to wrist restraints. (Id.). Defendant Street, who was also nearby, approached the area after wrist restraints were applied and assisted Officer Odom with escorting Plaintiff towards the restrictive housing unit. (Id.; Doc. No. 27-2 at ¶¶ 8, 10: Street Aff.). During the escort, Plaintiff resisted the escort by pulling back and forth between Defendant Street and Officer Odom. (Doc. No. 27-1 at ¶ 14(e); Doc. No. 27-2 at ¶ 11). Plaintiff continued his resistance despite orders directing him to stop. (Id.). As a result of Plaintiff's refusal to comply with orders and continued resistance, Defendant Street and Officer Odom secured Plaintiff against the wall to regain control of him. (Doc. No. 27-1 at ¶ 14(f); Doc. No. 27-2 at ¶ 12).

Defendant Clifton arrived and ordered that leg restraints be applied due to Plaintiff's disruptive behavior. (Doc. No. 27-1 at ¶ 14(g); Doc. No. 27-2 at ¶ 12; Doc. No. 27-3 at ¶ 10: Clifton Aff.). After Defendant Clifton applied leg restraints, Plaintiff refused to walk and told staff they would have to carry him. (Doc. No. 27-1 at ¶ 14(g); Doc. No. 27-3 at ¶ 10; Doc. No. 27-2 at ¶ 13). Defendant Clifton ordered Defendant Street and other correctional officers to place Plaintiff face down on the floor, utilize the four-man carry technique, and take him to the restrictive housing unit. (Doc. No. 27-1 at ¶ 14(h); Doc. No. 27-3 at ¶ 11; Doc. No. 27-2 at ¶ 13).

Upon arriving at the restrictive housing unit, correctional officers took Plaintiff to the private and secure shower area so they could remove the leg restraints and perform a complete search of Plaintiff. (Doc. No. 27-1 at ¶ 14(i); Doc. No. 27-3 at ¶ 12; Doc. No. 27-2 at ¶ 14). As the leg restraints were removed and correctional officers started exiting the area, Plaintiff began trying to kick staff. (Doc. No. 27-1 at ¶ 14(j); Doc. No. 27-3 at ¶ 13; Doc. No. 27-2 at ¶ 15). Defendant Clifton applied a pressure-point move to the Mandibular Angle and rolled Plaintiff

over onto his stomach. (Doc. No. 27-1 at ¶ 14(k); Doc. No. 27-3 at ¶ 13). The correctional officers were then able to safely exit the area and secure the door. (Id.). Plaintiff then stated that he was unable to stand up. (Doc. No. 27-1 at ¶ 14(l); Doc. No. 27-4 at ¶ 10: Davis Aff.).

Correctional Sergeant Darren Daves and Correctional Officer Christopher Caldwell entered the shower area to stand Plaintiff up. (Id.). Plaintiff attempted to head-butt Sergeant Daves. (Doc. No. 27-1 at ¶ 14(l); Doc. No. 27-4 at ¶ 11). Sergeant Daves secured and maintained control of Plaintiff by placing him against the shower wall. (Doc. No. 27-1 at ¶ 14(m); Doc. No. 27-4 at ¶ 11). Officer Caldwell and Sergeant Daves then backed out of the shower while Sergeant Daves maintained control of Plaintiff's wrist restraints. (Id.). They secured the door and removed his wrist-restraints through the trap door. (Id.).

Correctional officers searched Plaintiff's person and then gave him a clean set of clothes. (Doc. No. 27-1 at ¶ 14(n)). Officers placed Plaintiff in full restraints, and nurse Wilson medically assessed Plaintiff at the restrictive housing unit. (Doc. No. 27-1 at ¶ 14(n); Doc. No. 27-5 at ¶¶ 13-14: Wilson Aff., Ex. A). During the medical assessment, Plaintiff complained of pain in his right temple, wrist, and ribs. (Doc. No. 27-5 at ¶ 15, Ex. A). Nurse Wilson observed no objective signs of trauma or injury on Plaintiff, such as contusions, abrasions, or lacerations, nor did he appear to be in distress. (Doc. No. 27-5 at ¶ 16, Ex. A). Furthermore, during the medical assessment, Plaintiff did not indicate that he was stabbed in the eye with a key, or that he was hit, kicked, or punched. (Doc. No. 27-5 at ¶ 17, Ex. A).

Prison officials investigated the incident according to the prison's policies and standard operating procedures and concluded that the force used by correctional staff, including Defendants, was reasonable, necessary, and justified to gain and maintain control of Plaintiff, ensure his compliance with lawful orders, and prevent imminent assault of staff. (Doc. No. 27-1

4

at ¶¶ 8-10, 12, 15, Ex. D). As a result of this event, Plaintiff was charged with attempting to assault officers, using profane language, and disobeying orders. (Doc. No. 27-1 at ¶ 14(o), Ex. C).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56

5

provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

### A. Plaintiff's Claim Against Moving Defendants in their Official Capacities

First, to the extent that Plaintiff has sued Defendants in their official capacities, a suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 n.55 (1978).

Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54 (1996). Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally Mary's House, Inc. v. North Carolina, 976 F. Supp. 2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina which had not been waived). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claims against them in their official capacities.

### B. Plaintiff's Claims Against Moving Defendants in their Individual Capacities

Here, Plaintiff claims that he was slammed into the wall and the floor, punched, hit, kicked, and stabbed in the eye with a key. The record evidence reveals three distinct use of force incidents involving Defendants: (1) placing Plaintiff against the wall, (2) placing Plaintiff on the floor, (3) using a pressure-point move. The Court will address each distinct incident in turn.

First, as to the force used in placing Plaintiff against the wall, the summary judgment

7

evidence shows that the force was applied in direct response to Officer Odom and Defendant Street perceiving the threat to safety and order created by Plaintiff's resistance and refusal to comply with orders. (Doc. No. 27-1 at ¶¶ 14(e-f); Doc. No. 27-2 at ¶¶ 11-12). Before he was placed against the wall, Plaintiff repeatedly tried to pull away from an escort and continuously refused orders to stop. (Doc. No. 27-1 at ¶¶ 14(e-f); Doc. No. 27-2 at ¶¶ 11-12). The amount of force used was proportionate to the need presented because correctional staff had to regain and maintain control of Plaintiff and secured him to the wall in order to do so. (Id.). Accordingly, the evidence shows that the force used to secure Plaintiff to the wall was applied in good faith to maintain or restore discipline and not with malicious intent. Accord Simmons v. Sharpe, No. 5:10-cv-37, 2012 WL 140903 (W.D.N.C. Sep. 28, 2012) (granting summary judgment to the defendants, where the plaintiff alleged that the defendants used excessive force against him when they secured him against a wall, where the evidence showed that the plaintiff was resisting and refusing to comply with orders to stop resisting, and where the plaintiff's minimal injuries were not supported by the plaintiff's declarations that he never resisted the officers, was not disobedient, and that an officer "threw" him against the wall).

As to the force used to place Plaintiff on the floor, the record evidence demonstrates that it was necessary to place Plaintiff on the floor to restore discipline after he refused orders to walk and resisted staff by stating that staff would need to carry him to restrictive housing. (Doc. No. 27-1 at ¶¶ 14(g-h); Doc. No. 27-3 at ¶¶ 10-11; Doc. No. 27-2 at ¶ 13). The force applied in placing Plaintiff on the floor was proportionate to the need presented, as it was the only way staff could proceed with transporting Plaintiff using the four-man carry technique. (Id.). Plaintiff was placed on the floor in direct response to Plaintiff's refusal to walk and telling staff that they would need to carry him to restrictive housing. (Doc. No. 27-1 at ¶¶ 14(g-h); Doc. No. 27-3 at

8

¶¶ 10-11; Doc. No. 27-2 at ¶ 13). Additionally, the objective record evidence, which indicated that Plaintiff suffered no visible injuries, refutes Plaintiff's allegations that he was "slammed" to the floor and otherwise assaulted. (Doc. No. 27-5, Ex. A). In sum, the evidence demonstrates that the force was applied in good faith to maintain or restore discipline, and not with malicious intent. Accord Galeas v. Horne, No. 3:11-cv-220, 2013 WL 1181600 (W.D.N.C. Mar. 21, 2013) (unpublished) (granting defendants' summary judgment motion, where the plaintiff alleged that multiple correctional staff threw him to the floor twice, kicked, punched, and otherwise assaulted him when trying to remove him from his cell, where the evidence showed that the plaintiff had refused numerous orders on multiple occasions, resisted the officers, that the force used was minimal and necessary to restore discipline, and where the plaintiff sustained only very minor injuries.); see also McMillian v. LeConey, No. 5:09cv175, 2011 WL 2144628 (E.D.N.C. May 31, 2011) (unpublished) (granting summary judgment to the defendant in an excessive force case where the plaintiff contended that he did not resist the officer in any way and that the officer "slammed" him against a wall and then "slammed" him onto the ground, where he had no discernible injuries), aff'd, 455 F. App'x 295 (4th Cir. 2011).

As to the pressure-point move to the Mandibular Angle, the record evidence demonstrates that Defendant Clifton applied the pressure-point move to prevent imminent assault on staff when Plaintiff began trying to kick staff. (Doc. No. 27-1 at ¶ 14(j-k); Doc. No. 27-3 at ¶ 13; Doc. No. 27-2 at ¶ 15). Thus, the pressure-point move was applied in good faith to prevent assault, maintain or restore discipline, and not with malicious intent. Accord Hunt v. Grady, No. 5:12-cv-144, 2014 WL 4829067 (W.D.N.C. Sep. 29, 2014) (unpublished) (no excessive force where the plaintiff punched the defendant-correctional officer, resulting in other nearby officers taking the plaintiff to the floor and restraining his wrists, where plaintiff continued resisting and

attempting to assault the officers, and where the defendant used a pressure point move to the Mandibular Angle), aff'd, 599 Fed. Appx. 531 (4th Cir. 2015).

Finally, as to Plaintiff's alleged injuries, the objective medical evidence does not support Plaintiff's claim that he was slammed into the wall, punched in the face, or stabbed in the eye with a key, as his medical records show that he did not sustain any injury or trauma, such as contusions, abrasions, or lacerations, nor did he appear to be in distress. (Doc. No. 27-5 at ¶ 16, Ex. A). Although the fact that a prisoner suffered only minor injuries is not dispositive in an excessive force claim, the lack of serious injury may be considered a factor in the excessive force analysis. See Wilkins v. Gaddy, 559 U.S. at 38. Here the lack of serious injury—indeed the lack of any objective medical evidence of injury—further supports Defendants' contention on summary judgment that excessive force was not used against Plaintiff.

In opposing the summary judgment motion, Plaintiff has not come forward with evidence from which reasonable jurors could find that his alleged injuries were the result of malicious and sadistic conduct by Defendants, rather than as a part of a good-faith effort to restore or maintain discipline. The uncontroverted evidence shows that Defendants' use of force, in placing Plaintiff against a wall, and then on the floor, and using a pressure-point move, were all done to gain or maintain control of Plaintiff, ensure his compliance with lawful orders, and to prevent imminent assault of correctional staff, and these actions were not taken "maliciously or sadistically for the purpose of causing harm" or used force "of a sort repugnant to the conscience of mankind[.]" Whitley, 475 U.S. at 327 (internal quotations and citations omitted). Therefore, there are no genuine issues as to any material fact and Defendants are entitled to judgment as a matter of law.

In sum, for the reasons stated herein, Defendants are entitled to summary judgment.[1]

## IV. CONCLUSION

For the reasons stated herein, Defendants are entitled to summary judgment as to Plaintiff's excessive force claim.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 25), is **GRANTED**. To this extent, Plaintiff's Motion for Partial Summary Judgment, (Doc. No. 36), is **DENIED**.

2. This action is dismissed with prejudice.

3. The Clerk is directed to terminate this action.

Signed: March 14, 2019

Frank D. Whitney
Chief United States District Judge

---

[1] Defendants also raised qualified immunity as a defense to Plaintiff's excessive force claim. Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendants are entitled to qualified immunity.